IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTWAINE CHAMBERS | CRIMINAL ACTION<br><br>NO. 24-209 |
|---|---|

MEMORANDUM RE: MOTION TO SUPPRESS

**Baylson, J.**                                                                                                    **December 10, 2025**

## I.   INTRODUCTION

Defendant Antwaine Chambers ("Defendant") seeks to suppress physical evidence obtained from his residence and his statement given to police officers after the search. Defendant also seeks a <u>Franks</u> hearing for two alleged misstatements and an alleged omission in the search warrant affidavit. For the following reasons, the Court will **DENY** Defendant's request for a <u>Franks</u> hearing, and Defendant's Motion to Suppress (ECF 54) is **DENIED**.

## II.  FACTUAL AND PROCEDURAL HISTORY

In October 2023, the Philadelphia Police FBI Task Force began investigating Defendant Chambers, based on information from a reliable FBI Confidential Human Source ("CHS"). ECF 54 at 5; ECF 58 at 2. The CHS alleged that a male known as "Twan," identified as Defendant, was a bulk fentanyl dealer who resided at 5591 N. Hill Creek Drive, Philadelphia, and used a silver van to deliver narcotics. ECF 54 at 6; ECF 54-1 at 2. On November 7 and November 9, 2023, physical surveillance observed Defendant's van parked in front of the residence and Defendant entering and exiting the residence. ECF 54 at 6; ECF 54-1 at 3. On November 14, 2023, physical

1

surveillance observed Defendant exiting his residence to meet with a vehicle, and a transaction appeared to take place. ECF 54 at 6; ECF 54-1 at 3.

The first controlled buy occurred on November 15, 2023. ECF 54-1 at 8; ECF 58 at 2. Surveillance observed Defendant exiting the residence and entering his van around 12:57 P.M. ECF 54-1 at 8. Defendant then drove to 5151 N. Hutchinson Street, where he met with Jonathan Brown, a known fentanyl dealer. ECF 54 at 6–7; ECF 54-1 at 8. Defendant entered 5151 N. Hutchinson Street while Mr. Brown waited outside. ECF 54 at 7; ECF 54-1 at 8–9. Defendant then exited 5151 N. Hutchinson Street carrying a large white bag, which he placed in his van. ECF 54-1 at 4–5, 9. Afterwards, Defendant returned to 5591 N. Hill Creek Drive, where Defendant took the large white bag from the van and carried it into the residence. Id. Around 1:45 P.M., Defendant left the residence and met the CHS at a pre-determined location. Id. at 9. Defendant completed the controlled purchase with the CHS in the CHS's vehicle. Id. at 5, 9. Following the transaction, Defendant returned to 5591 N. Hill Creek Drive. Id.

The second controlled buy occurred on November 27, 2023. Id. at 12–13; ECF 58 at 2. Surveillance observed Defendant walking into 5591 N. Hill Creek Drive around 1:20 P.M. ECF 54-1 at 12. Around 1:43 P.M., Defendant exited the residence, entered his van, and drove to a Dunkin Donuts parking lot. Id. at 5, 12. The controlled purchase of fentanyl was completed inside Defendant's van in the parking lot. Id. After the transaction, Defendant left the parking lot and later returned to 5591 N. Hill Creek Drive. Id. at 5.

On November 30, 2023, a search warrant was executed at 5591 N. Hill Creek Drive and Defendant was arrested in the basement bedroom. ECF 54 at 8; ECF 58 at 3. Law enforcement discovered contraband during the search, including fentanyl, methamphetamine, crack cocaine, and PCP, as well as a scale, drug packaging materials, cash, and several firearms. ECF 54 at 8;

ECF 58 at 3. After his arrest, Defendant was advised of his rights at the scene. ECF 54 at 8; ECF 58 at 3. Defendant was transported to the FBI Philadelphia Field Office where he was read his Miranda rights. ECF 54 at 8; ECF 58 at 3. After waiving his rights, Defendant admitted the drugs and guns in the house were his. ECF 54 at 8; ECF 58 at 3.

On May 22, 2024, Defendant was indicted on three counts: Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C) (Count I); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count II); and Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1) (Count III). ECF 1. On May 30, 2024, Defendant had his initial appearance, was arraigned on the above charges, and entered a plea of not guilty. ECF 8; ECF 11.

On October 14, 2025, Defendant filed the instant Motion to Suppress. ECF 54. On November 4, 2025, the Government filed a Response in Opposition. ECF 58. The Court held an evidentiary hearing on November 12, 2026. ECF 59. Following the evidentiary hearing, the Court ordered Defendant to file a reply brief addressing whether Defendant has shown material misstatements and/or omissions that were recklessly or intentionally made in the application for a search warrant to support a Franks hearing. ECF 60. On November 26, 2025, Defendant filed a reply brief. ECF 61. Trial is currently scheduled for January 2026.

### III. PARTIES' ARGUMENTS

#### 1. **Defendant's Contentions**

*First*, Defendant argues the affidavit of probable cause is fundamentally flawed because the investigation and the affidavit explicitly point to a different location as the source of the contraband, thus negating any inference that his residence was a criminal hub. ECF 54 at 9–13. Defendant contends there are two specific issues in the affidavit. The first issue regards the

3

November 15, 2023, transaction, which states that after the meeting in the CHS vehicle, Defendant returns to 5591 N. Hill Creek Drive, suggesting that Defendant re-entered the property. Id. at 10–11. However, the FBI FD-302 Report mentions Defendant returning to 5591 N. Hill Creek Drive and then leaving again one minute later without entering the property, and surveillance is terminated. Id. Defendant argues without the warrant's inference that Defendant went into 5591 N. Hill Creek Drive directly after meeting the CHS, there is no nexus to the property. Id.

The second issue regards the November 27, 2023, transaction, which states that after the transaction with the CHS, Defendant returned to 5591 N. Hill Creek Drive. Id. at 11. However, the FBI FD-302 Report states that after the alleged transaction, Defendant pulls out of Dunkin' Donuts heading west on Mayfair, then stops at HKM Mini Mart where he is observed placing something in the trunk area of the van and then "surveillance is ended." Id. Defendant argues the van was the nexus for the drug transportation and transaction, and 5151 N. Hutchinson Street (Jonathan Brown's residence) was the nexus for the drug supply. Id. at 11–12. Defendant argues 5591 N. Hill Creek Drive was a "personal hub," and the affidavit lacks any direct evidence that a drug transaction or other criminal activity occurred at his residence. Id.

*Second*, Defendant argues because the warrant was invalid, the search of 5591 N. Hill Creek was unconstitutional, and all evidence and statements obtained as a direct result of that search must be suppressed as "fruit of the poisonous tree." Id. at 14–15. Defendant further argues that although he was read his Miranda rights, his statements were made immediately following the discovery of the physical evidence, with no intervening circumstances that could have broken the causal chain. Id. (citing Brown v. Illinois, 422 U.S. 590, 603–04 (1975)).

*Third*, Defendant argues he is entitled to a Franks hearing because the affidavit contains a misrepresentation and an omission that, at a minimum, were made with a reckless disregard for

4

the truth. Id. at 15–23. Defendant contends that without the misstatement and the omission, the affidavit's remaining facts are not sufficient to establish probable cause. Id. at 23.

As to the misstatement, Defendant argues the narrative of Controlled Buy #1 differs from the "Summary" section of the same affidavit. Id. at 19–20. Defendant contends the affidavit states that after meeting with Jonathan Brown, a known fentanyl dealer, Defendant returned to 5591 N. Hill Creek Drive with a large white bag, entered and exited the residence, and then proceeded to meet the CHS for the sale. Id. However, the "Summary" section states that "During the controlled drug buys CHAMBERS exited 5591 N Hill Creek Drive and immediately met with the CHS. CHAMBERS obtained illegal narcotics to sale [sic] to the CHS from 5151 N Hutchinson Street." Id. Defendant argues the Summary is false, as Defendant did not "immediately" meet with the CHS after exiting his residence and he did not obtain the drugs directly from the Hutchinson Street address. Id. Rather, Defendant returned to his residence with a bag before the transaction. Id.

As to the omission, Defendant argues the affidavit intentionally omits information regarding the November 15, 2023, transaction. Id. at 20–21. Defendant argues the recording device is left inside the vehicle and the CHS is not being audio or video recorded for nearly four (4) minutes. Id. Defendant argues these unaccounted four (4) minutes are not mentioned in the affidavit and questions the legitimacy of the transaction, including whether the narcotics came from Defendant. Id.

**2. Government's Contentions**

The Government contends the warrant contained sufficient detail and was supported by ample probable cause. ECF 58 at 7. The Government argues that under the "totality of the circumstances," it was likely that contraband and evidence of a crime would be found at the residence. Id. at 12–14. The Government details how facts in the affidavit corroborate the

information provided by the CHS, tie Defendant to 5591 N. Hill Creek Drive, implicate Defendant's involvement in fentanyl distribution, and confirm Defendant travelled directly from the residence to the controlled purchases. Id. at 7–12. The Government notes that Defendant admits the events of Controlled Buy #1 are critical to the finding of probable cause, as it "creates a powerful inference that the drugs were located inside the residence." Id. at 11 n.2.

*Second*, the Government argues Defendant failed to meet the "substantial preliminary showing" requirement under Franks because Defendant has not shown that material false statements or omissions were intentionally or recklessly made, and did not provide sworn affidavits or reliable statements from witnesses. Id. at 14, 17–18. The Government contends the misstatement is "readily proven hollow by a review of the affidavit itself" and the omission is "speculative." Id. at 15–16.

The Government argues there is no misstatement regarding the Summary, as the critical facts are all in the affidavit, and the Summary section is meant to state inferences and conclusions based on the officers' training and experience. Id. at 16. The Government argues that immediately preceding both controlled buys, Defendant left from his residence to travel directly to the meeting location. Id. at 16–17. The Government further notes that Defendant claims there is another misstatement regarding where Defendant went following the controlled buys. Id. at 16 n.3; see also ECF 54 at 10–11. The Government contends there is no misstatement, as the affidavit simply states Defendant "returned" to 5591 N. Hill Creek, not that he "entered" or "exited" like stated elsewhere in the warrant. ECF 58 at 16 n.3. The Government argues where Defendant went after the controlled buys is also not relevant, as the critical fact is that Defendant was at his residence and left just prior to each buy, implying that he obtained the drugs from that location. Id.

6

The Government argues the omission regarding the "unaccounted for four (4) minutes" is speculative. Id. at 17. The Government contends Defendant does not offer any supporting evidence and fails to show this omission was intentional or done with reckless disregard for the truth. Id. at 17–18. Rather, the Government argues the affiant reasonably believed it was unnecessary to include every detail regarding the controlled buy, and the "unaccounted for four (4) minutes" does not negate any of the probable cause. Id. at 18.

Moreover, the Government argues that even if the statement was omitted intentionally or with reckless disregard for the truth, it was not material. Id. at 18–19. The Government argues the affidavit contained other evidence that the defendant was involved in drug trafficking, was residing at 5591 N. Hill Creek and it being more probable than not that he was using that residence as a place to store drugs. Id. The Government contends that even if the Court excises from the warrant Controlled Buy #1, the warrant still contains sufficient facts for probable cause. Id. at 19.

*Third*, the Government argues the good faith exception applies and thus, even if the Court were to find a lack of probable cause, suppression would not be required. Id. at 20–21. The Government contends the officers objectively reasonably relied on a warrant approved by a magistrate judge, the warrant contained no false statements, and the warrant was not "bare bones" or "so lacking in probable cause." Id. The Government argues the affidavit set forth facts from which the investigators could reasonably conclude there was probable cause that evidence of Defendant's illegal activities occurred at the residence. Id. at 21.

Lastly, the Government argues Defendant's statement should not be suppressed under the "fruit of the poisonous tree." Id. at 21–22. The Government argues the Court need not reach this issue because the warrant survives legal challenge, and Defendant does not raise any other independent constitutional claim warranting suppression. Id.

**3. Defendant's Reply Brief**

On reply, Defendant argues in the absence of "affidavits or sworn or otherwise reliable statements of witnesses," the documentary evidence offered must possess inherent indicia of reliability. ECF 61 at 1. Defendant argues he included "other reliable statements of witnesses"— *i.e.*, police documentation and audio and video recordings—that establish "a deliberate falsehood and material omission" from the affidavit of probable cause.[1] Id. at 3–4. Defendant contends the audio and video recordings show that the CHS did not "immediately" return to the police but met with someone else before returning, and the description of Controlled Buy #1 failed to state the CHS met with another individual after conducting a controlled buy with Defendant.[2] Id. at 4–5.

Defendant next contends that if the omission regarding the unaccounted for four (4) minutes was included, this would impact the CHS's reliability and raise doubts about whether Defendant delivered drugs to the CHS. Id. at 1–2, 7 (citing United States v. Calisto, 888 F.2d 711 (3d Cir. 1988)). Moreover, Defendant argues a Franks violation would still occur even if the affiant relied in "good faith" on another officer's false information.[3] Id. at 7–8.

---

[1] Defendant notes in Wilson, the petitioner did not present sworn affidavits of witnesses to establish the Franks violation but used other police documentation to establish it. ECF 61 at 7. Wilson, however, was a § 1983 action for false arrest made pursuant to a warrant, and did not explicitly deal with a Franks violation. Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000). The Third Circuit has not defined what constitutes "otherwise reliable statements of witnesses," but this Court presumes this includes documentary evidence with some demonstrable indica of reliability, such as deposition testimony, surveillance footage, or pictures. Regardless, Defendant did not provide any sworn affidavits or documentary evidence, and mentioned, but did not submit, the audio and video recording in support of his Motion.

[2] Defendant's opening brief notes that the audio and video have an "unaccounted for four (4) minutes" that could "giv[e] the CHS the ability to purchase narcotics from another individual." ECF 54 at 21. However, on reply, Defendant explicitly states that "the CHS did not immediately go to police after the alleged transaction" and "met with someone else before returning to police." ECF 61 at 6. The Government did not say whether the CHS met with someone else, just that Defendant speculates the "possibility" that the drugs came from someone else. ECF 58 at 17. As the audio and video recordings were not submitted as an exhibit to the briefing and Defendant does not present any other evidence proving the CHS met with another individual (such as an affidavit from "Omar"), Defendant's argument is speculative.

[3] Defendant slightly misstates the law here. In Rugendorf v. United States, 376 U.S. 528, 532 (1964), the Supreme Court held that the inaccuracies of the affidavit were peripherally relevant to the showing of probable cause and did not go to the integrity of the affidavit. In Franks, the Court stated in dicta that it took as its premise in Rugendorf that "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant

## IV.  LEGAL STANDARD

The Fourth Amendment guarantees that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." United States v. Charles, No. CR 19-63, 2022 WL 267813, at *2 (E.D. Pa. Jan. 28, 2022) (Baylson, J.).  Probable cause means a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  The standard is a flexible, common-sense inquiry based on the totality of the circumstances.  Id. at 232.  The "critical element" is a reasonable belief that the items to be seized are located at the specific property sought to be searched.  Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).  This is known as the "nexus" requirement.  A sufficient nexus may be inferred from direct or circumstantial evidence.  United States v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993).

The Third Circuit has held that a district court's role is "limited" "[w]hen faced with a challenge to a magistrate's probable cause determination." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993).  A magistrate's determination should be upheld if "the affidavit on which it was based provided a substantial basis for finding probable cause." United States v. Blanding, No. CR 18-249-3, 2019 WL 5088465, at *1 (E.D. Pa. Oct. 10, 2019) (Baylson, J.) (citing United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001)).  If a warrant is found to be invalid, evidence obtained under it may still be admissible if officers acted in good faith reliance on the warrant.  United States v. Leon, 468 U.S. 897, 920–22 (1984).

---

personally ignorant of its falsity." See Franks, 438 U.S. at 164 n.6.  However, the Third Circuit has not definitively ruled on this issue.  In Brown, the Third Circuit held a substantial showing of the informant's untruthfulness is not sufficient to warrant a Franks hearing, but did not discuss whether a police officer's untruthfulness to a police officer affiant would change the analysis. United States v. Brown, 3 F.3d 673, 677 (3d Cir. 1993).  The Third Circuit has further held that "information received from other law enforcement officials during the course of an investigation is generally presumed to be reliable." United States v. Yusuf, 461 F.3d 374, 384–85 (3d. Cir. 2006).  But see United States v. Harrison, 400 F. Supp. 2d 780 (E.D. Pa. 2005) (Padova, J.) (citing Franks in considering the state of mind of the police officer affiant as well as the state of mind of the police officers reporting to the affiant).

To receive a Franks hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks v. Delaware, 438 U.S. 154, 155–56 (1978). The Third Circuit has extended this right to challenges based on factual omissions from the affidavit. See United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006). The defendant must also show the false statement or omission was "material" or "necessary" to the finding of probable cause. Franks, 438 U.S. at 155–56; Yusuf, 461 F.3d at 383. However, there is a "presumption of validity with respect to the affidavit supporting the search warrant." Franks, 438 U.S. at 171–72.

Statements "are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000). Omissions "are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge want to know." Id. The "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." Franks, 438 U.S. at 171–72. The defendant must specify the statements that are allegedly false and provide an offer of proof or explain why such offer of proof is absent. See id. "Allegations of negligence or innocent mistake are insufficient." Id.

V.  DISCUSSION – **FRANKS** HEARING

Defendant has not made the required "preliminary showing," and therefore the Court will **DENY** Defendant's request for a Franks hearing. See Franks, 438 U.S. at 155; ECF 58 at 15.

Defendant's alleged misstatement regarding the Summary of Controlled Buy #1 is not a misstatement, as the summary is intended to state inferences and conclusions, and the critical facts supporting probable cause are included elsewhere in the affidavit. ECF 58 at 16–17. Defendant's other alleged misstatement where Defendant went after the controlled buys is also not a

10

misstatement, as the affidavit states Defendant "returned" to his property, not that he "entered" or "exited" like stated elsewhere in the warrant. Id. at 16 n.3; see also ECF 54 at 10–11. The Court finds that even if they are misstatements, they were for minor details and not material to the finding of probable cause. See ECF 58 at 16–17. There are other facts that show probable cause, including that Defendant obtained drugs from Jonathan Brown, and Defendant left his residence prior to each buy. ECF 58 at 16, 16 n.3; see Yusuf, 461 F.3d at 383–84. Furthermore, Defendant has not shown that the misstatements were made knowingly and intentionally or with reckless disregard for the truth. See ECF 54 at 19–23; ECF 58 at 18–19; ECF 61 at 4, 6–7. Defendant simply argues they were made intentionally and to "purposely mislead," but does not provide any support for this contention. ECF 54 at 19–21; ECF 61 at 4, 6–7; United States v. Brown, 3 F.3d 673, 676–78 (3d Cir. 1993) (challenge to the truth of the affidavit was not sufficient for a Franks hearing where defendant offered no evidence that the affiant knowingly or recklessly gave false statements).

The Court also finds that Defendant's contentions regarding the omission are speculative. Defendant does not provide sworn affidavits or other reliable statements from witnesses, as required under Franks. See ECF 54 at 19–23; ECF 58 at 17–18; ECF 61 at 3–7. Defendant does not provide the audio and video recording (he only states that it exists) or other evidence (such as an affidavit from "Omar") to support his contention that the CHS met with another individual. See ECF 54 at 19–23; ECF 58 at 17–18; ECF 61 at 5–7. However, the Court finds that, even assuming the omission occurred, it was not material to the finding of probable cause. ECF 58 at 18–19. If the affidavit disclosed the unaccounted for four (4) minutes (or removed the details of Controlled Buy #1), the affidavit would still contain probable cause—namely, that Defendant obtained drugs from Jonathan Brown, Defendant left his residence prior to each buy, and Defendant participated in a second controlled buy with the CHS on November 27, 2023. See id. at 17–19; Yusuf, 461

11

F.3d at 383–84. Furthermore, Defendant has not shown this omission was made knowingly and intentionally, or with reckless disregard for the truth. See ECF 58 at 18–19; Brown, 3 F.3d at 676–78; Wilson, 212 F.3d at 788. At most, the omission was negligent, which is insufficient for a Franks hearing. See Yusuf, 461 F.3d at 383–84.

## VI. DISCUSSION – MOTION TO SUPPRESS

The Court will also **DENY** Defendant's Motion to Suppress. The Court finds that the search warrant affidavit provided a substantial basis for finding probable cause, and as noted on the record, is one of the most detailed affidavits the undersigned has ever seen. See ECF 59.

Defendant focuses on where he went after the controlled buys. Defendant contends that "if the [sic] accurate information was provided on where Defendant was prior to meeting with the CHS, and where he went immediately post transaction" there is no nexus to his property. ECF 61 at 2. But where Defendant went after the controlled buys is not relevant, as the critical facts are that Defendant went to Jonathan Brown's house on Hutchinson Street to get a re-supply of fentanyl, Defendant brought the drugs back to his house, and Defendant left his house just prior to each controlled buy. See ECF 54 at 10–11, 22; ECF 58 at 10–12. These facts were accurately captured in the affidavit and support the inference that Defendant had the drugs at his residence, brought smaller quantities of the drugs into his van to sell to the CHS, and the rest of the drugs were located inside Defendant's residence. See ECF 54 at 10–11, 22; ECF 58 at 11–2, 16 n.3.

As the affidavit contains sufficient facts to support probable cause, the warrant and resulting search are valid. Defendant made the incriminating statements after he waived his Miranda rights. ECF 54 at 14–15; ECF 58 at 21–22. Therefore, the Court will not suppress the evidence and statements under the "fruit of the poisonous tree."

**VII.    CONCLUSION**

  An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\Criminal Cases\24-209, USA v. Chambers\24-209, Memo re MTS.docx